UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re:<br><br>**WORLDWIDE RECYCLING EQUIPMENT SALES, LLC,**<br><br>　　　　　　　　　　　　**Debtor.** | Chapter 11<br><br>Case No. 17-20195 |

### UMB BANK, N.A.'S OBJECTION TO DEBTOR'S USE OF CASH COLLATERAL

UMB Bank, N.A. ("UMB"), a secured creditor and party in interest in the bankruptcy proceeding of Worldwide Recycling Equipment Sales, LLC (the "Debtor"), objects to the Debtor's use of UMB's cash collateral and seeks an Order for Adequate Protection pursuant to 11 U.S.C. § 361. In support of this Objection UMB respectfully represents:

### FACTUAL AND PROCEDURAL BACKGROUND

1.　　UMB made four separate loans to Debtor to support Debtor's business operations.

2.　　First, the parties executed that certain Business Loan Agreement (Asset Based) (the "Loan Agreement") for a revolving line of credit facility in the original principal amount of $1,500,000.00, evidenced by a Promissory Note dated November 14, 2014. The Loan Agreement was extended and modified pursuant to that certain Business Loan Agreement (Asset Based) dated May 12, 2016 (the "Second Loan Agreement"). Debtor executed and delivered to UMB a Promissory Note dated May 12, 2016 payable to the order of UMB, in the original principal amount of $1,800,000 (the "Extended Note"). UMB agreed to modify the terms of the Second Loan Agreement pursuant to a Change in Terms Agreement dated August 12, 2016. The Change in Terms Agreement constituted an amendment of the Extended Note, which extended the maturity date of the Extended Note to October 27, 2016.

3. Second, UMB made a loan to Debtor on or about June 19, 2015 for a term loan in the original principal amount of $2,100,000 pursuant to that certain Business Loan Agreement ("Business Loan Agreement"). Debtor executed and delivered to UMB a Promissory Note dated June 19, 2015 in the original principal amount of $2,100,000 evidencing loan made pursuant to the Business Loan Agreement ("Business Note").

4. Third, Debtor executed and delivered to UMB a Promissory Note dated February 12, 2016 in the original principal amount of $235,500 (the "Third Note"). Debtor expressly acknowledged that repayment of the Third Note was secured by the Commercial Security Agreement dated November 14, 2014, as defined below.

5. Fourth, Debtor executed and delivered to UMB a Promissory Note dated March 7, 2016 in the original principal amount of $126,000 (the "Fourth Note"). Debtor expressly acknowledged that repayment of the Fourth Note was secured by the Commercial Security Agreement dated November 14, 2014, as defined below.

6. To secure repayment of the Second Extended Note, the Third Note, and the Fourth Note, Debtor executed and delivered to UMB a Commercial Security Agreement dated November 14, 2014 (the "Security Agreement"), granting to UMB security interests in all of the Debtor's assets, including but not limited to, Inventory, Chattel Paper, Accounts, Equipment and General Intangibles and all proceeds thereof (the "Collateral").

7. A UCC-1 financing statement was filed to perfect UMB's interest in the Collateral on November 24, 2014.

8. To secure repayment of the Business Note, Debtor executed and delivered to UMB a Deed of Trust with Future Advances and Future Obligations Governed by Section 443.055 RSMO dated June 19, 2015 (the "Deed of Trust"), granting a lien on certain real estate

described therein to secure repayment of the Business Note, as well as personal property and rents.  The Deed of Trust was recorded in Randolph County, Missouri on June 30, 2015, at Book 834, Page 804.  Debtor also executed and delivered to UMB that certain Assignment of Rents dated June 19, 2015, as further security for repayment.  The Deed of Trust encumbers the property on which the Debtor operates as well as some surrounding property.

9. UMB is the current owner and holder of the notes, security agreements and guaranties described above (together, the "Loan Documents").  All of Debtor's obligations are cross-collateralized.

10. The Second Extended Note matured on December 15, 2016.

11. Debtor failed to pay the Second Extended Note and failed to make payments due on each of the other notes described above.

12. Due to these defaults, UMB sent Debtor multiple written notices of default, acceleration and demand, however, UMB has not received payment in full of the amounts due pursuant to the Loan Documents, and has not received any payments of any type since March, 2017.

13. On or about December 15, 2016, the parties entered into a Forbearance Agreement to afford Debtor time to refinance the loan.  The Forbearance Agreement terminated under its own terms as of February 15, 2017.

14. The parties have not entered into an extension or replacement of the Forbearance Agreement, despite continued negotiations.

15. The amounts due pursuant to the Loan Documents as of April 14, 2017 were as follows:  Second Extended Note:  $1,697,293.13; Business Note:  $2,012,435.81; Third Note:

$188,588.01; and Fourth Note: $102,906.20. Interest, costs, and fees continue to accrue daily on the Notes (in total, the "Indebtedness").

16. Pre-petition, the parties initiated the following lawsuits against one another related to the Indebtedness:

   a. *UMB Bank, N.A. v. Worldwide Recycling Equipment Sales, LLC* in the Circuit Court of Randolph County, Missouri, Case No. 17RA-CV00492;

   b. *Worldwide Recycling Equipment Sales, LLC v. UMB Bank, n.a.* in the Circuit Court of Randolph County, Missouri, Case No. 17RA-CV00591;

17. On Thursday, July 6, 2017 (the "Petition Date"), the Debtor filed its petition with this Court under chapter 11 of the Bankruptcy Code.

18. Since the Debtor is in a Chapter 11 bankruptcy proceeding, UMB has been stayed, pursuant to 11 U.S.C. § 362, from any act to collect, assess, or foreclose on the Loan Documents.

19. The value of the Collateral will continue to decline with its continued use and the passage of time.

**OBJECTION**

20. UMB objects to the Debtor's use of UMB's cash collateral without UMB's consent or without the provision for adequate protection to UMB pursuant to Section 363 of the Bankruptcy Code.

21. Section 363 of the United States Bankruptcy Code prohibits the Debtor from using the cash collateral unless UMB consents or the Court authorizes its use, after notice and a hearing, and a specific finding that UMB's interest in the cash collateral is adequately protected.

22. The Debtor has not sought from UMB authority to use its cash collateral, and UMB has not consented to the Debtor's use of cash collateral.

23. Further, the Debtor has not offered adequate protection to UMB with regard to its use of the cash collateral. Section 363(c)(2) of the Bankruptcy Code provides that

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
> (A) each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section

11 U.S.C. § 363(c)(2). UMB objects and does not consent to the use of its cash collateral to fund any other expenses or operations of the Debtor. Accordingly, pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtor may not use the UMB's cash collateral for these purposes "unless . . . the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2)(B). The phrase "in accordance with the provisions of this section" found in section 363(c)(2)(B) incorporates the adequate protection requirement of section 363(e), which requires that the Court "prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Absent the adequate protection of UMB's interests, Bankruptcy Code section 363 prohibits the Debtor from using cash collateral.

24. The concept of the "adequate protection" of a secured creditor's interest in collateral as required under Bankruptcy Code section 363 was derived by Congress from the constitutional protection of property interests granted by the Fifth Amendment and provides for the institution of a mechanism to "insure that the secured creditor receives the value for which he bargained." S. Rep. No. 989 at 53 (1978); *accord* H.R. Rep. No. 95-595 at 339 (1977). *See Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 278-79 (1940).

25. The Debtor bears the stringent burden of proving by "clear and convincing" evidence" that the proposed use of cash collateral will provide for the adequate protection of the secured creditor's interest. The Debtor has not and cannot meet its burden of demonstrating that UMB will be adequately protected from the diminution of its cash collateral that will occur upon the Debtor's use of it.

26. UMB's interest in the Collateral is not adequately protected. The Debtor has not provided UMB with the cash funds necessary (i) to preserve the value of UMB's position in the Collateral and (ii) to maintain the Collateral in good condition against physical depreciation and other items.

27. As adequate protection for the Debtor's use of UMB's cash collateral, and to secure UMB against any diminution in value of its cash collateral, the Debtor should at a minimum:

a. Provide periodic cash payments to preserve value of UMB's position in the Collateral;

b. grant a replacement lien on the Collateral and all cash collateral generated post-petition therefrom to the extent that the Debtor cannot demonstrate that the value of the Collateral is sufficient to provide adequate protection for any diminution in the value of UMB's cash collateral;

c. grant a claim having priority over all other administrative expenses allowable under Bankruptcy Code § 507(a)(1), all as contemplated by Bankruptcy Code § 507(b), which claims shall be *pari passu* with any super-priority claims of granted to UMB; and

d. provide an accounting of all Collateral and cash collateral in the Debtor's possession as of the Petition Date, monthly reports to UMB with respect to any post-petition use of cash collateral, and any financial reporting required under the Loan Documents.

28. UMB is entitled to relief from the automatic stay unless UMB is provided adequate protection which will result in the realization by UMB of the indubitable equivalent of UMB's interests in the Collateral on the filing date of Debtor's Chapter 11 petition.

29. Absent the imposition of the limitations on the Debtor's use of the cash collateral and the provision of the adequate protection outlined above, the Debtor should not be authorized to use UMB's cash collateral.

WHEREFORE, UMB objects to the continued use of its cash collateral to pay unsecured debt while UMB is not receiving adequate protection payments from Debtor, and prays that this Court enter an order providing that Debtor shall make monthly adequate protection payments to UMB; granting UMB's replacement liens; and for such other relief as the Court deems proper.

    Respectfully submitted,

    **BRYAN CAVE LLP**

    By: /s/ Cullen K. Kuhn
        Cullen K. Kuhn    MO 53151
        Laura Uberti Hughes    MO 60732
        211 North Broadway, Suite 3600
        St. Louis, Missouri 63102
        Telephone: (314) 259-2000
        Facsimile : (314) 259-2020
        ckkuhn@bryancave.com
        laura.hughes@bryancave.com

    -and-

    Laurence M. Frazen    MO 31309
    Michelle Masoner    MO 49445
    (pro hac vice pending)
    1200 Main Street, Suite 3800
    Kansas City, Missouri 64105-2100
    Telephone: (816) 374-3200
    Facsimile: (816) 374-3300
    lmfrazen@bryancave.com
    michelle.masoner@bryancave.com

    **ATTORNEYS FOR UMB BANK, N.A.**

## **CERTIFICATE OF SERVICE**

  This certifies that on July 7, 2017, the foregoing was served via the Court's ECF system to all counsel of record.

                /s/ Cullen K. Kuhn
                Attorney for UMB Bank, N.A.