## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 2:17-bk-20195(CER) |
| WORLDWIDE RECYCLING ) | |
| EQUIPMENT SALES, LLC, ) | |
| ) | Chapter 11 |
| Debtor. ) | |
| ) | HONORABLE Charles E. Rendlen, III |
| ) | |
| ) | J. Talbot Sant, Jr. |
| ) | Affinity Law Group, LLC |
| ) | 1610 Des Peres Rd., Suite 100 |
| ) | St. Louis, Missouri 63131 |
| ) | (314) 872-3333 |
| ) | Tsant@affinitylawgrp.com |
| ) | |
| ) | **Hearing Date: July 14, 2017** |
| ) | **Hearing Time: 10AM** |
| ) | **Location:  Courtroom 7S** |

### DECLARATION OF JEFF SAYRE IN SUPPORT OF FIRST DAY MOTIONS

JEFF SAYRE, being duly sworn, hereby deposes and declares under penalty of perjury:

1.    I am the President of Worldwide Recycling Equipment Sales, LLC ("Worldwide" or "Debtor"), and have been with Worldwide since its formation 14 years ago.

### Debtor, Worldwide's Operations

2.    Worldwide manufactures and sells equipment used in the recycling and environmental clean-up industries, as well as in the oil and gas and bio-solids markets.

3.    Worldwide has approximately $4,900,000 in outstanding secured debt, broken down as follows:

**UMB Bank**: $3,932,028.14, secured by a lien on virtually all personal assets of Debtor and certain real estate as follows:

    i.   real property and improvements thereon located at 1414 Riley Industrial Drive ("Riley Industrial");

    ii.  68 acres approximately of real property and improvements thereon (the "Miller Tract");

    b.   **Bank of Kirksville**: approximately $774,725.05, secured by a lien on certain real estate located at 1414 Becflo ("Becflo") and specified inventory;

    c.   **Internal Revenue Service**: approximately $140,000, secured by a lien on certain real estate of Debtor; and

    d.   **Missouri Department of Revenue**: approximately $60,000 secured by judgment liens on Debtor's real estate and funds in Debtor's account at Bank of America.

4.    Worldwide 's gross revenue in 2016 was $8,262,733.14, with net revenue of ($1,484,511.81). Debtor's gross revenue in 2014 was in excess of $14 Million but declined the next two years due to a decline in the oil and gas industry which Worldwide serves.

5.    The oil and gas industry has started to rebound. In addition, Worldwide landed continuing orders from a new customer in the bio-solids market. Worldwide's future prospects are good, provided it is able to assume and perform obligations under current and anticipated future Purchase Agreements.

6.    Worldwide developed and implemented a cost cutting and turnaround plan that included a staff reduction of 29 full time employees and three part-time employees; resulting in aggregate salary reduction of $1,371,878 and voluntary temporary payroll reduction by salaried employees of $125,000 on an annual basis; and liquidation of underutilized equipment and excess inventory in the past three months of $38,500.

7.    Worldwide projects net profit of $61,623 for the 15-day period following the

Petition Date; and a net profit of $1,520,000 for the 90-day period following the Petition Date.

### Expedited Hearing

8.    The matters set forth herein and in Worldwide's First Day Motions, require action

by Worldwide within the next week to ten days in order for Worldwide to protect its assets and

the value thereof, continue in business and comply with applicable laws, including: keeping

insurance coverages, honoring obligations to Employees, obtaining DIP financing and using cash

collateral, maintaining bank accounts where they are, and obtaining authority to pay Critical

Vendor in the aggregate no more than $50,000 to keep them supplying. Accordingly, it is

important for the Court to hear the First Day Motions on an expedited basis, on July 14, as

scheduled.

### Motion to Transfer Divisions

9.    Worldwide is based in Moberly, Missouri which is in Randolph County.

10.    Worldwide's counsel is located in St. Louis County, Missouri.

11.    Worldwide's primary secured lender is UMB Bank, with offices in St. Louis,

Missouri and its counsel is Bryan Cave with offices in St. Louis as well.  Recently, Worldwide

has dealt with personnel at a subsidiary of UMB located in Dallas, Texas.

12.    My belief is that St. Louis would be a more convenient and cost effective forum

in which to conduct hearings in this Case, than Hannibal. Accordingly, Worldwide seeks transfer

of venue of this Case from the Northern Division to the Eastern Division of the Bankruptcy

Court for the Eastern District of Missouri.

3

## **Bank Account/Business Forms**

14.    Worldwide's primary account, from which it pays payroll and makes payments to suppliers is located at First State Community Bank. Secondary Accounts are at Bank of America and Bank of Kirksville.

15.    It is vital to Debtor's continued smooth operation that it be able to use those accounts, including to pay vendors, employees, insurers and others.  The disruption caused by opening new accounts would harm Debtor.  Worldwide and these banks are able to identify and stop any payments of pre-Petition obligations not authorized by the Court.

16.    Similarly, causing Worldwide to use new purchase orders and other business forms would potentially, needlessly harm Debtor by disrupting its dealings with customers and suppliers.

17.    Accordingly, Worldwide seeks authority from the Court to maintain its existing Bank Account and Secondary Accounts and use business forms on terms set forth in the First Day Motion with the Court.

## **Wage Motion**

18.    Worldwide employs fifteen (15) employees in the ordinary course of its business, nearly half of which are hourly and the remainder salaried.

19.    Worldwide's Employees (a) manage Debtor's day to day business activities; (b) manufacture and sell equipment; (c) ensure smooth performance of required work, as well as handle receivables and payables.  Continued performance by the Employees is essential to Worldwide's continued operations.

4

20.    As of the Petition Date, Worldwide owed eleven (11) of its Employees in aggregate, $38,727.84 in accrued vacation pay and owed one Employee $130 in expense reimbursements.

21.    Worldwide pays its Employees weekly.  Funds are direct deposited into Employees' accounts weekly.  The most recent payroll was made on July 6, 2017, for services provided through July 6, 2017.  The next scheduled payroll deposits will be made July 14 for work performed July 7, and the week ending July 14.

22.    The hourly Employees earn between $11 and $26 per hour and earn time and a half or double time according to federal and state employment guidelines.

23.    Future weekly payrolls are estimated to average approximately $11,600 through the end of 2017, with the most recent payroll being $11,581.26.  No Employees are owed pre-petition hourly wages or salary (aside from voluntary reductions) at this time.

24.    Worldwide withholds from its Employees' wages and salaries amounts for federal income, social security and Medicare taxes, and remits the same to appropriate taxing authorities. To the extent there are withheld amounts for said taxes, Worldwide seeks authorization to continue to deduct these funds and pay them to such governmental entities as are entitled to them in the ordinary course of business.  Worldwide also seeks authority to continue withholding amounts from Employee payroll deposits for state and federal unemployment insurance, and to continue remitting withholdings to the applicable state and federal taxing authorities.

25.    Worldwide has, in the past, deducted various amounts from Employees' payroll deposits pursuant to garnishments for child support and other obligations.  Currently, there are no

active garnishments, but Worldwide seeks authority to honor future garnishments because the

sums garnished do not belong to Worldwide.

26.     Worldwide is pursuing health insurance coverage for its Employees through the

Affordable care act at an estimated cost to Worldwide of $6500 per month in aggregate.

27.     Honoring the obligations to Employees as set forth herein, including for accrued

vacation pay, an expense reimbursement and contributing to health insurance for Employees are

vital to retaining the Employees and allowing Worldwide to continue to operate to maximize the

expected payout to creditors in this Case.

28.     The aggregate cost of such obligations described herein is less than $12,850 per

Employee.

### Insurance Motion

29.     Worldwide maintains coverages as set forth in paragraph 5 of its First Day

Motion with respect to Insurance Policies, with annual aggregate premiums of $115,526.15 and

aggregate monthly premiums of $9,793.85.  The remaining details concerning the policies set

forth in such paragraph and the deductibles and coinsurance described in paragraphs 5, 9 and 10

are also true and accurate.  These Policies prevent Worldwide from incurring losses beyond its

ability to pay and, in certain instances, are required by law and/or agreements with lenders.

Accordingly, maintaining them and paying premiums required thereunder is important to allow

Worldwide to continue operating and maximize the amount it can pay its creditors.

30.     Certain Policies require audits and adjustments of amounts due thereunder.  It is vital that Debtor be authorized to pay any adjusted amounts to keep the Policies in place and maintain the coverages provided by such Policies.

31.     Gallaher is Debtor's insurance broker and its fees are included in the premiums described in the referenced paragraphs of the First Day Motion regarding Insurance Policies and herein.  Payment of such fees in order to keep the coverage under the Policies is critical.

32.     Worldwide therefor seeks authorization from the Court to continue making payments due under such Policies, including premiums and brokerage fees included in the premiums, as set forth in the Motion and this Declaration.

**Utilities Motion**

33.     Worldwide obtains utilities services from five providers listed in paragraph 9 of its First Day Motion regarding Utility Providers, and projects monthly bills as indicated in such paragraph.

34.     Worldwide's past billings from Utility Providers are as set forth in paragraph 8 of its Motion regarding utilities, but Debtor is using less natural gas after completion of a drying project and has fewer cell phones than in recent months and projects future actual billings as stated in paragraph 9.

35.     Debtor needs its utility services to continue operating, service customer orders and maximize earnings from which to pay creditors.

36.     Payment of the amounts proposed in paragraphs 9 and 12 of its First Day Motion regarding utilities, is fair and reasonable and would allow Worldwide to continue operating.

7

37.     As indicated above, Worldwide projects net profits over the next 90 days and accordingly, will be able to stay current with its Utility Providers.

**Critical Vendor Motion**

38.     Worldwide has certain suppliers/vendors of equipment, parts, materials, fuels and other goods.  These vendors cannot be timely, easily or cheaply replaced.

39.     Without the items these vendors supply, Worldwide may well fail to deliver orders to customers, lose customers and as a result, lose revenue and possibly, have to cease operating.

40.     Through payment of no more than $50,000 in aggregate to these "Critical Vendors" Worldwide will be able to continue uninterrupted the flow of equipment, parts, fuel and materials Worldwide needs to satisfy customer orders and keep operating its business. Accordingly, authorization (but not direction) to pay such amounts is beneficial and appropriate under the circumstances and Worldwide seeks such relief.

I verify under penalty of perjury that the foregoing statement is true and correct to the best of my information, knowledge and belief.

DATED this 11th day of July, 2017

/s/ Jeff Sayre_____
Jeff Sayre

8