UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: <br><br> WORLDWIDE RECYCLING <br> EQUIPMENT SALES, LLC, <br><br> Debtor. | Case No.: 2:17-bk-20195(CER) <br><br> Chapter 11 <br><br> HONORABLE Charles E. Rendlen, III <br><br> J. Talbot Sant, Jr. <br> Affinity Law Group, LLC <br> 1610 Des Peres Rd., Suite 100 <br> St. Louis, Missouri 63131 <br> (314) 872-3333 <br> Tsant@affinitylawgrp.com <br><br> **Hearing Date: July 14, 2017** <br> **Hearing Time: 10AM** <br> **Location: Courtroom 7S** |

**EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO:
(A) OBTAIN SECURED POST-PETITION FINANCING PURSUANT TO 11 U.S.C.
§364(d)(1); (B) GRANT ADEQUATE PROTECTION; (C) USE CASH COLLATERAL;
AND (D) FOR ADDITIONAL RELIEF**

COMES NOW Worldwide Recycling Equipment Sales, LLC ("Debtor" or "Worldwide"), by and through counsel, Affinity Law Group, LLC, and for its *Emergency Motion for Order Authorizing Debtor to: (A) Obtain Secured Post-Petition Financing Pursuant to 11 U.S.C. §364(d)(1); (B) Grant Adequate Protection; (C) Use Cash Collateral; and (D) For Additional Relief* (the "Motion") states:

## BACKGROUND

1. On July 6, 2017 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Eastern District of Missouri.

2. Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its business as a debtor in possession. No trustee or examiner has been appointed, and no official committee of unsecured creditors has been designated yet in this Case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). No prior request has been made to this Court or any other court for relief sought herein.

4. The Debtor brings this Motion pursuant to 11 U.S.C. §364(d)(1) and 363(c)(2).

5. The Debtor manufactures and sells equipment used in recycling and environmental cleanup industries and in the oil and gas and bio-solid markets, including under the brand names Tuffman and Vulcan Systems.

6. The Debtor employs fifteen (15) employees.

## STRUCTURE OF DEBTOR'S SECURED DEBT

7. The Debtor currently has approximately $4,900,000 in outstanding secured debt (excluding debt secured by vehicles). The secured debt is owed to the following lenders:

   a. UMB Bank: $3,932,028.14, secured by a lien on virtually all assets of Debtor including certain real estate as follows: 1414 Riley Industrial Drive and 68 acre tract ("Miller Tract");

   b. Bank of Kirksville: approximately $774,725.05, secured by a lien on certain real estate property located at 1414 Becflo and specified inventory.

   c. Internal Revenue Service: approximately $140,000, secured by a lien on certain real estate of Debtor;

d.  Missouri Department of Revenue: approximately $60,000 secured by judgment liens and a garnishment on accounts at Bank of America.

## CURRENT ASSETS OF DEBTOR

8. The Debtor's primary assets and estimated value therof are as follows:

| Assets | Value |
| --- | --- |
| Real Estate | $3,730,000 (appraised) |
| Inventory | $5,619,064 (book value) |
| Equipment | $587,923 (book value) |
| TOTAL | $9,936,987 |

## THE DEBTOR'S NEED FOR SECURED POST-PETITION FINANCING AND DESCRIPTION THEREOF

9. Without approval to use cash collateral and borrow on a post-petition basis, Debtor would be unable to pay costs of performing under valuable contracts, including with Boomerang Rubber, Inc., Lhoist North America, Ltd., West Petroleum, US Greentech and R360 Environmental Solutions, LLC, which are expected to generate in excess of $3 Million in gross revenue over the next three months and are profitable.

10. Debtor will generate revenue in excess of costs of performing these contracts and has filed, or will file a separate motion to assume prepetition contracts referenced in paragraph 9 (certain contracts will be entered post-petition).

11. Debtor's net revenues year to date through July 6, 2017 are $287,516.68.

12. Debtor has implemented a cost cutting and turnaround plan that includes a staff reduction of 29 full time employees resulting in an aggregate wage and salary reduction of

$1,371,878, a voluntary salary reduction at an annualized amount of $125,000; and liquidation of underutilized equipment in the past three months with a value of $38,500.

13. Debtor projects net operating profits of $61,623 for the 15-day period following the Petition Date and positive net cash flow of $1,540,788 for the 90-day period following the Petition Date.

14. Debtor's current cash balance is $134,000 approximately. Without use of cash collateral during the first 15 days following the Petition Date and then post-petition borrowing thereafter, for 90 days, Debtor would be unable to meet its next payroll and pay critical costs associated with performing on its current contracts, thereby losing any chance of restructuring its business, preserving jobs, and paying a meaningful amount to unsecured creditors.

15. Given its current financial position and status of operations, the Debtor cannot obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtor securing, pursuant to Bankruptcy Code § 364(d), such indebtedness and obligations with a "super" priority security interest in, and super-priority lien on all personal property of Debtor, and a first priority lien on unencumbered real estate owned by Debtor.

16. Floyd E. Riley, an insider of Debtor is negotiating with Debtor the terms of a post-petition line of credit in the form of a Debtor-in-Possession Credit Agreement, (the "DIP Financing Agreement"). Proposed terms are:

| Borrowing Limit: | $400,000 |
|---|---|
| Collateral (lien priority): | Inventory, Equipment, Accounts Receivable, Certain Real Estate: <br> (first): <br> (a) unimproved 1-acre tract ("Jordan Morris Tract") <br> (b) "West 40" Tract <br> (c) 5-acre tract (Jim Riley Tract" |
| Interest Rate: | 7% |
| Term: | Six (6) Months |
| Additional Terms: | Lender Obligation to Foreclose First on Real Estate |

17. If authorized to borrow post-petition and use cash collateral as proposed herein, the Debtor will be able to operate its business and generate revenue to pursue repayment of creditors and to preserve jobs. If it is unable to borrow as proposed herein and use cash, the Debtor would be faced with cash shortfalls and would be forced to shut down operations.

18. In accordance with §§ 364(a), (b), and (c) of the Bankruptcy Code, the Debtor has attempted to obtain secured or unsecured debtor in possession financing on terms as, or more, beneficial than those set forth herein. Despite those efforts, however, the Debtor has been unable to obtain alternate, more favorable financing.

19. Finally, the terms and conditions of the proposed post-petition line of credit from Floyd Riley are fair and reasonable under the circumstances. Debtor's reaching agreement to obtain an operating line of credit is necessary to continue the Debtor's business operations.

Thus, the Debtor believes that the entry of an order granting the relief requested in this Motion is in the best interests of its estate and creditors.

20. The Court's approval of the DIP Financing Agreement as may be amended and grant of adequate protection described above: (a) will minimize the disruption of the Debtor's business that would otherwise result from the absence of debtor in possession financing; (b) will increase the likelihood that the Debtor will reorganize successfully; and (c) is necessary to avoid immediate and irreparable harm to the Debtor and its assets, business, goodwill, reputation, employees, and creditors. For these additional reasons, approval of the DIP Financing Agreement and grant of adequate protection evidenced thereby is in the best interests of the Debtor, its estate and its creditors.

21. The interests of Debtor's secured lenders are adequately protected by virtue of the value of their collateral in excess of Debtor's indebtedness, and by virtue of the net positive cash flow Debtor will generate over the next three months.

## USE OF CASH COLLATERAL

22. Pursuant to section 363(c)(2) of the Bankruptcy Code, this Court may authorize the Debtor's use of cash collateral.

23. Proceeds from collection of Debtor's receivables constitute cash collateral pursuant to section 363(a).

24. Debtor proposes to expend approximately $67,464 within the next 15 days to pay only necessary expenses during such period, and expend $1,526,712 total within the 90 days following the Petition Date, all as set forth with more specificity in the 15-day and the 90-day budgets (the "Budgets") attached hereto collectively as **Exhibit A** and incorporated herein by reference.

25. Floyd Riley will be granted a "super-priority" "priming" lien in inventory, equipment, and accounts receivable, as well as a first priority lien in the unsecured real estate, and will be required to foreclose first against real estate before foreclosing interests in other pledged collateral.

26. The Debtor's use and expenditure of cash are necessary and beneficial to the Debtor's Bankruptcy Estate to enable Debtor to stay in business and finish profitable jobs, as well as to pursue a restructuring to repay creditors a meaningful amount.

27. All creditors' interests in cash collateral are adequately protected by virtue of the revenues generated through such usage and substantial equity cushions, as well as Debtor's payment of the following adequate protection amounts to each creditor as indicated:

| Creditor | Monthly Payment |
|---|---|
| UMB Bank | $13,131 |
| Bank of Kirksville | $5,399 |
| IRS | $2,500 |
| Missouri Department of Revenue | $1,000 |

WHEREFORE, the Debtor respectfully prays this Court enter an Order: (A) authorizing the Debtor to: (1) obtain a secured post-petition line of credit in an amount up to $400,000 in accordance with the terms set forth in the Motion and the DIP Financing Agreement on an interim basis, and to execute and deliver the DIP Financing Agreement as may be amended and all instruments, certificates and documents which may be required or necessary for the performance by the Debtor under the DIP Financing Agreement and for the creation and perfection of the security interests and liens described in the DIP Financing Agreement; (2) use

cash collateral, also in accordance with the Budgets; and (3) make the adequate protection payments set forth herein; (B) providing that orders granting the relief requested herein are immediately effective; (C) scheduling a final hearing on this Motion; and (D) granting the Debtor such other and further relief as the Court deems just.

Dated: July11, 2017

St. Louis, Missouri

/s/ J. Talbot Sant, Jr.
J. Talbot Sant, Jr., Mo. Bar #35324
Affinity Law Group, LLC
1610 Des Peres Road, Suite 100
St. Louis, Missouri 63131
(314) 872-3333
(314) 872-3365 (facsimile)
tsant@affinitylawgrp.com

*Proposed Counsel for Debtor and Debtor-in-Possession, Worldwide Recycling Equipment Sales, LLC*

# EXHIBIT A

## EXHIBIT A

9

## ITEMIZED BUDGET - 15 DAYS

|  | | 07/07-07/21 | | | TOTAL |
|---|---|---|---|---|---|
| *Revenue* | | | | | |
| COMPANIA | | $16,295 | | | $16,295 |
| ENVIROSYSTEM | | $9,542 | | | $9,542 |
| GP RECYCLING | | $2,250 | | | $2,250 |
| CARBON CONC | | $101,000 | | | $101,000 |
| TOTAL Revenue | $0 | $129,087 | $0 | | $129,087 |
| *Disbursements:* | | | | | |
| **Payroll - Gross** | | $29,850 | | | $29,850 |
| **Payroll Taxes** | | 5,650 | | | 5,650 |
| **Insurance** | | | | | |
| Cincinnati Ins | | 6,820 | | | 6,820 |
| MEM W/C | | 1,456 | | | 1,456 |
| **Utilities** | | | | | |
| Ameren | | 7,572 | | | 7,572 |
| Direct TV | | 150 | | | 150 |
| Socket | | 1,500 | | | 1,500 |
| **Consultants** | | 4,616 | | | 4,616 |
| **Advertising** | | | | | |
| GetResponse | | 2,750 | | | 2,750 |
| Salesforce | | 2,100 | | | 2,100 |
| **Cost of Goods Sold** | | 3,000 | | | 3,000 |
| **Miscellaneous** | | 2,000 | | | 2,000 |
| TOTAL Operating Disb | $0 | $67,464 | $0 | | $67,464 |
| TOTAL Disbursements | $0 | $67,464 | $0 | | $67,464 |
| **Cashflow** | $0 | $61,623 | $0 | $0 | $61,623 |

**BUDGET - 90 DAYS**

|  | 07/22-08/21 | 08/22-09/21 | 09/22-10/21 | TOTAL |
|---|---|---|---|---|
| Revenue |  |  |  |  |
| R360 | $1,400,000 |  |  | $1,400,000 |
| West Petro |  | $1,221,500 |  | $1,221,500 |
| US Greentech |  |  | $325,000 | $325,000 |
|  |  |  |  | $0 |
| Columbia Co. Recycling |  | $31,000 |  | $31,000 |
| DLS Consulting | $30,000 |  |  | $30,000 |
| Am. Process Systems |  | $60,000 |  | $60,000 |
|  |  |  |  | $0 |
| TOTAL Revenue | $1,430,000 | $1,312,500 | $325,000 | $3,067,500 |
| Disbursements: |  |  |  |  |
| Payroll | $68,174 | $66,500 | $66,500 | $201,174 |
| Payroll Taxes | 15,220 | 14,830 | 14,830 | 44,880 |
| Insurance | 17,888 | 16,239 | 17,888 | 52,015 |
| Utilities | 8,051 | 8,051 | 8,051 | 24,153 |
| Consultants | 10,000 | 10,000 | 10,000 | 30,000 |
| Advertising | 4,300 | 4,300 | 4,300 | 12,900 |
| Legal | 5,000 | 5,000 | 5,000 | 15,000 |
| IRS | 2,500 | 2,500 | 2,500 | 7,500 |
| MoDept Revenue | 1,000 | 1,000 | 1,000 | 3,000 |
| BOK Loan | 5,399 | 5,399 | 5,399 | 16,197 |
| UMB Loan | 13,131 | 13,131 | 13,131 | 39,393 |
| Cost of Goods Sold | 565,500 | 500,000 | - | 1,065,500 |
| Miscellaneous | 5,000 | 5,000 | 5,000 | 15,000 |
| TOTAL Operating Disbursements | $721,163 | $651,950 | $153,599 | $1,526,712 |
| TOTAL Disbursements | $721,163 | $651,950 | $153,599 | $1,526,712 |
| Cashflow | $708,837 | $660,550 | $171,401 | $1,540,788 |