UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re:<br><br>WORLDWIDE RECYCLING<br>EQUIPMENT SALES, LLC,<br><br>    Debtor. | Case No.: 2:17-bk-20195(CER)<br><br>Chapter 11<br><br>HONORABLE Charles E. Rendlen, III<br><br>J. Talbot Sant, Jr.<br>Affinity Law Group, LLC<br>1610 Des Peres Rd., Suite 100<br>St. Louis, Missouri 63131<br>(314) 872-3333<br>Tsant@affinitylawgrp.com<br><br>**Hearing Date: July 14, 2017**<br>**Hearing Time: 10AM**<br>**Location:  Courtroom 7S** |

**DECLARATION OF JEFF SAYRE IN SUPPORT OF
MOTION TO OBTAIN POST-PETITION FINANCING; USE; USE CASH
COLLATERAL; GRANT ADEQUATE PROTECTION AND  FOR ADDITIONAL
RELIEF**

1. I am President of Worldwide Recycling Equipment Sales, LLC ("Worldwide or "Debtor") and have been with Worldwide since its inception.

**STRUCTURE OF DEBTOR'S SECURED DEBT**

2. The Debtor currently has approximately $4,900,000 in outstanding secured debt (excluding debt secured by vehicles).  The secured debt is owed to the following lenders:

    a. UMB Bank: $3,932,028.14, secured by a lien on virtually all assets of Debtor including certain real estate as follows:

        i. real property and improvements thereon located t 1414 rile Industrial Drive ("Riley Industrial");

  ii. 68 acres approximately of real property and improvements thereon (the "Miller Tract");

 b. Bank of Kirksville: approximately $774,725.05, secured by a lien on certain real estate located at 1414 Becflo ("Becflo") and specified inventory;

 c. Internal Revenue Service: approximately $140,000, secured by a lien on certain real estate of Debtor;

 d. Missouri Department of Revenue: approximately $60,000 secured by judgment liens on Debtor's real estate and funds in Debtor's account at Bank of America.

## CURRENT ASSETS OF DEBTOR

3. The Debtor's primary assets and estimated value thereof are as follows:

| Assets | Value |
|---|---|
| Real Estate | $3,730,000 (appraised) |
| Inventory | $5,619,064 (book value) |
| Equipment | $587,923 (book value) |
| **TOTAL** | $9,936,987 |

## THE DEBTOR'S NEED FOR SECURED POST-PETITION FINANCING AND DESCRIPTION THEREOF

4. Debtor requires use of cash collateral and post-petition financing to perform under valuable contracts, including with Boomerang Rubber, Inc., Lhoist North America, Ltd., West Petroleum, US Greentech and R360 Environmental Solutions, LLC, which are expected to generate in excess of $3 Million in gross revenue over the next three months and are profitable.

2

5. Debtor will generate revenue in excess of costs of performing these contracts and has filed, or will file a separate motion to assume the contracts.

6. Debtor's net revenues year to date through July 6, 2017 are $287,516.68.

7. Debtor implemented a cost cutting and turnaround plan that included: a staff reduction of 29 full time and three part-time employees, resulting in an aggregate wage/salary reduction of $1,371,878, a voluntary salaried employee salary reduction with an annualized value of $125,000; and liquidation of underutilized equipment in the past three months with a value of $38,500.

8. Debtor projects net operating profits of $61,623 for the 15-day period following the Petition Date and $1,631,880 for the 90-day period following the Petition Date.

9. Debtor's current cash balance is $_____. Without use of cash collateral during the first 15 days following the Petition Date and then post-petition borrowing thereafter, for 90 days, Debtor would be unable to meet its next payroll and pay critical costs associated with performing on its current contracts, thereby losing any chance of restructuring its business, preserving jobs, and paying a meaningful amount to unsecured creditors.

10. Given its current financial position and status of operations, the Debtor cannot obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtor securing, pursuant to Bankruptcy Code § 364(d), such indebtedness and obligations with a "super" priority security interest in, and super-priority lien on all personal property of Debtor, and a first priority lien on unencumbered real estate owned by Debtor.

11. Debtor negotiated to obtain a post-petition line of credit from insider Floyd E. Riley pursuant to a Debtor-in-Possession Credit Agreement Dated as of July _, 2017, (the "DIP Financing Agreement"), and as summarized below:

| Borrowing Limit: | $400,000 |
|---|---|
| Collateral (lien priority): | Inventory, Equipment, Accounts Receivable, Certain Real Estate: <br> (first): <br> (a) unimproved 1-acre tract ("Jordan Morris Tract") <br> (b) "West 40" Tract <br> (c) 5-acre tract (Jim Riley Tract" |
| Interest Rate: | 7% |
| Term: | Six (6) Months |
| Additional Terms: | Lender Obligation to Foreclose First on Real Estate |

12. If authorized to borrow post-petition and use cash collateral as proposed, the Debtor will be able to operate its business and generate revenue to pursue repayment of creditors and to preserve jobs. If it is unable to borrow as proposed and use cash, the Debtor would be faced with cash shortfalls and would be forced to shut down operations.

13. Debtor attempted to obtain secured or unsecured debtor in possession financing on terms as, or more, beneficial than those available pursuant to the DIP Credit Agreement. Despite those efforts, however, the Debtor has been unable to obtain alternate, more favorable financing.

14. The terms and conditions of the DIP Credit Agreement are fair and reasonable under the circumstances. Borrowing pursuant to the Agreement is necessary for operation of Debtor's business. Thus, the Debtor believes that the entry of an order granting the relief

requested in Debtor's First Day Motion is in the best interests of Debtor's Bankruptcy Estate and creditors thereof.

15. The Court's approval of the DIP Financing Agreement, would: : (a) minimize the disruption of the Debtor's business that would otherwise result from the absence of debtor in possession financing; (b )increase the likelihood that the Debtor will reorganize successfully; and (c) allow Debtor to avoid immediate and irreparable harm, including to its operations, goodwill, reputation, employees, and creditors. For these additional reasons, approval of the DIP Financing Agreement and grant of adequate protection evidenced thereby is in the best interests of the Debtor, its estate and its creditors.

16. Debtor's pre-petition secured lenders will not be harmed as a result of the proposed borrowing and use of cash collateral because the value of each creditor's collateral exceeds the indebtedness to each creditor an, in addition, Debtor will operate profitably over the next 90 days.

## USE OF CASH COLLATERAL

17. Debtor proposes to expend approximately $67,464 within the next 15 days to pay only necessary expenses during such period, and expend $1,440,320 total within the 90 days following the Petition Date, all as set forth with more specificity in the 15 day and the 90 day budgets (the "Budgets") attached hereto collectively as **Exhibit B** and incorporated.

## PRIMING LIEN; ADEQUATE PROTECTION

18. Floyd Riley will be granted a "super-priority" "priming" lien in inventory, equipment, and accounts receivable, as well as a first priority lien in the above-referenced real property. However, in the event of Debtor's default under the DIP Credit Agreement, he would first have to exercise remedies against real property pledged.

19. The Debtor's use and expenditure of cash are necessary and beneficial to the Debtor's Bankruptcy Estate to enable Debtor to stay in business and finish profitable jobs, as well as to pursue a restructuring to repay creditors a meaningful amount.

20. Debtor further proposes to make the following payments to its secured creditors, to be applied against the obligations of Debtor to such creditors:>

<u>Creditor.</u>                                              <u>Bi-Weekly Payment</u>

UMB Bank

Bank of Kirksville

IRS

Missouri Department of Revenue

21. Accordingly Debtor has respectfully requested the Court to enter an Order: (A) authorizing the Debtor to: (1) obtain a post-petition line of credit in an amount up to $400,000 in accordance with the terms set forth in the DIP Financing Agreement on an interim basis, and to be expended pursuant to the Budgets, to execute and deliver the DIP Financing Agreement and all instruments, certificates and documents which may be required or necessary for the performance by the Debtor under the DIP Financing Agreement and for the creation and perfection of the security interests and liens described in the DIP Financing Agreement; (2) use cash collateral, also in accordance with the Budgets; and (3) make the adequate protection payments set forth herein; (B) providing that orders granting the relief requested herein are immediately effective; (C) scheduling a final hearing on this Motion; and (D) granting the Debtor such other and further relief as the Court deems just.

Dated: July 10, 2017

                                                                __/s/ Jeff Sayre_____
                                                                 Jeff Sayre