**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| In Re: ) | |
| ) | |
| WORLDWIDE RECYCLING EQUIPMENT ) | Case No. 17-20195-705 |
| SALES, LLC, ) | Honorable Charles E. Rendlen III |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | Hearing Date: November 28, 2017 |
| ) | Hearing Time: 10:00 a.m. |

## MOTION TO SELL ASSETS AT PUBLIC AUCTION AND PRIVATE SALE

COMES NOW Seth A. Albin, the duly appointed Trustee ("Trustee") for the Bankruptcy Estate of Worldwide Recycling Equipment Sales, LLC ("Debtor"), by and through his undersigned attorneys, and for his Motion to Sell Assets at Public Auction and Private Sale ("Motion"), states that:

1. Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 (the "Bankruptcy Code"), on or about July 6, 2017 (the "Petition Date") in the United States Bankruptcy Court for the Eastern District of Missouri.

2. The Chapter 11 case was converted to a Chapter 7 proceeding on July 26, 2017 (the "Conversion Date"). Trustee was appointed as the duly acting Chapter 7 bankruptcy trustee for this estate on July 27, 2017.

3. This Court has jurisdiction over this case and Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(M) and (O).

4. Pre-conversion, and in the ordinary course of its business, Debtor manufactured and sold equipment used in the recycling and environmental clean-up industries, as well as in the

oil, gas and bio-solids markets. As a result of Debtor's business operations, it acquired and possesses assets of substantial value, as well as assets of minimal value to the bankruptcy estate.

5. Trustee, after conducting his due diligence, has determined that, based on the current economic condition and the nature Debtor's business operations and property of the estate available for sale, it is in the best interests of the bankruptcy estate and its creditors to liquidate the estate's assets via a process that provides for a 90-day private sale period ("Pre-Sale Period") followed by a comprehensive public auction of any and all remaining assets ("Auction" and, collectively with the Pre-sale Period, the "Sale Process").

6. To accomplish an orderly and beneficial liquidation via the Sale Process, Trustee, contemporaneously herewith, has sought to employ the PPL Group, LLC, located at 105 Revere Drive, Ste. C, Northbrook, IL 60062 (the "PPL Group") and Myron Bowling Auctioneers, located at 3901 Kraus Lane, Hamilton, OH 45014 ("Myron Bowling" and, collectively with the PPL Group, the "Auctioneers"), to prepare, market, privately sell and conduct an auction of the bankruptcy estate's assets in accordance with the terms of that certain Guarantee Auction and Sale Agreement (the "Agreement")[1] entered into by and between Trustee and Auctioneers, a copy of which is attached hereto as Exhibit "A".

7. The Agreement details the terms of employment of Auctioneers as well as sets forth the process and procedures necessary to conduct the bifurcated Sale Process sought by Trustee.

8. In accordance with the terms of the Agreement, Trustee seeks to sell via a bifurcated Sale Process, subject to certain restrictions and further explanation contained in the Agreement, (i) all personal property located at Debtor's place of business in Moberly, Missouri (the "Premises"); (ii) all personal property of the bankruptcy estate located at other locations

---

[1] All capitalized terms shall be defined as set forth in the Agreement unless stated to the contrary herein.

1975888-1                                     2

formerly owned and operated by Debtor identified by the Trustee; and (iii) related tooling packages, related items, intellectual property, other intangible property, and miscellaneous contents of the Premises as further described in this Agreement (collectively, the "Assets").

9.   The Agreement explicitly excludes the following Assets (the "Excluded Assets") from any present sale by Trustee or Auctioneers: (i) all real property of the Debtor; (ii) all property or assets in which the Trustee admits he has no interest; and (iii) all property or assets determined by the Bankruptcy Court as not being property of the bankruptcy estate.

10.   Trustee proposes to sell the estate's interest in the Assets pursuant to the terms of the Agreement, which materially are summarized hereafter:

   a.   Subject to the terms of the Agreement, Auctioneers shall provide Trustee a guarantee of $650,000.00 for the Assets (the "Guarantee Price"), which shall be paid as follows:  (i) a non-refundable deposit (with limited exceptions) equal to 10% of Guarantee Price (the "Deposit") will be paid to the Trustee; (ii) the Deposit will be paid within two (2) business days of Court approval of this Motion; and, (iii) provided there is no breach or default of the Agreement, the balance of the Guarantee Price (the "Balance") will be paid no later than forty-eight (48) hours prior to the Auction of the Assets.

   b.   The actual amounts collected from any and all Sales (exclusive of sales tax and Buyer's Premium), shall be distributed as follows: (i) the first $650,000.00 to Auctioneers to reimburse the Guarantee Price already paid by Auctioneers; (ii) the next $55,000 to Auctioneers, plus the premium of any required Bond incurred by Auctioneer in excess of $500, to cover expenses and risk; and (iv) all additional proceeds will be split as follows: (I) $705,000.00-$750,000.00: 0% Auctioneer and 100% Trustee; (II)

$750,000.00-800,000.00: 10% Auctioneer and 90% Trustee; and (III) $800,000.00 and above: 15% Auctioneer and 85% Trustee.[2]

 c. All cleared funds shall be remitted to Trustee, via wire transfer, within seven (7) days of any Pre-Sale Period sale and for any Asset sold at Auction within thirty (30) days after receipt of the sale proceeds for each Asset sold. Auctioneer shall collect and remit sales tax to the appropriate taxing authorities and provide proof of remittance to Trustee. Sales tax collected will not enter the formula above. Under no circumstances shall Auctioneer allow the removal of a purchased item from the Premises until such time as the Auctioneer receives the full purchase price in immediately available funds.

 d. Should Trustee or Debtor receive any inquiries regarding the sale of any Assets, Trustee shall immediately refer such inquiries to Auctioneers.

 e. During the Pre-Sale Period, which shall encompass the ninety (90) days after the entry of an Order approving this Motion and authorizing the sale of the Assets (the "Approval Order"), Auctioneers shall take reasonable steps to advertise the sale of the Assets and seek to sell the Assets or any portion thereof, by private sale in an attempt to maximize the value of the Assets prior to auction. Auctioneers shall first obtain the written consent of the Trustee and any party(ies) possessing a lien on the Asset to be sold consistent with the Private Sale Procedures described hereinafter.

 f. Within thirty (30) days of the close of the Pre-sale period, Auctioneers shall conduct a public Auction of the remaining Assets. Auctioneer may establish reserves at the Auction, subject to the consent of the Trustee and the respective secured party(ies). All Assets will be offered and sold on an "AS-IS, WHERE-IS" basis, with no

---

[2] Any cost added to the above allowed expenses for the premium of any Bond in excess of $500 shall result in a corresponding dollar for dollar adjustment upward of each of the amounts list in subsections (i), (ii) and (iii) of this paragraph.

1975888-1    4

representations or warranties, free and clear of all liens and other interests in accordance with Section 363 of the Bankruptcy Code. Auctioneers shall use Auctioneer's contact information in all advertising of Auction; have the right to add machinery or equipment to Auction, if and only if Auctioneer separately accounts for the sale of machinery or equipment not included in the Assets; collect a reasonable deposit from Auction buyers; and shall have the right to determine all of the terms of Auction, subject to the consent of the Trustee and the respective secured party(ies).

      g.     Auctioneers shall be granted an exclusive, unrestricted, and unencumbered license to use the Premises to prepare for and conduct the Onsite Auction free of all costs (including all rent, utilities, trash removal, and security) commencing on the date of the fully executed Agreement and ending 180 days thereafter, unless otherwise extended by agreement of Trustee and Auctioneers, with the consent of any party secured by the premises (the "Agreement Term").

      h.     During the Agreement Term, Trustee agrees not to sell or release the Premises, absent exigent circumstances, and in no event shall the premises be sold, leased or otherwise transferred by the Trustee absent reasonable notice to Auctioneers and approval of the Bankruptcy Court.

      i.     A representative of Trustee will remain on the Premises to ensure entrance to the facility during normal work hours and ensure utilities are disconnected from any Assets to be removed or provide Auctioneers with keys and/or access code to the facility.

      j.     Prior to the hearing on this Motion, Auctioneers shall purchase, if required, a bond in accordance with the rules and regulations of the United States Trustee (the "UST") in an amount sufficient to protect the bankruptcy estate from loss. The terms

of the Bond shall be disclosed to the Bankruptcy Court at the hearing on this Motion and shall be accepted or rejected by the Bankruptcy Court at that time. In the event the bond is rejected by the Bankruptcy Court, Auctioneers shall have fifteen (15) days to obtain a bond that meets the requirements of the Bankruptcy Court. Failure of the Auctioneers to obtain the necessary bond shall void this Agreement. The first five hundred dollars ($500) of the cost of any Bond shall be incurred by the Auctioneer.

11. Since any and all sales during the Pre-Sale Period require the written consent of the Trustee and secured party(ies) and in an attempt to eliminate the cost and delay of having to file a separate motion with respect to each proposed Pre-Sale Period sale, Trustee seeks approval of Private Sale Procedures. The following Private Sale Procedures are designed to ensure proper notice of and opportunity to be heard on the proposed sale is given to all necessary parties-in-interest and to streamline the process to obtain Court approval for the sale of assets within specified economic parameters:

    a. Upon receipt of notice from Auctioneers of the details of an offer on a particular Asset during the Pre-Sale Period, Trustee shall determine, in his business judgment, whether the offer is or may be acceptable. As part of this process, Trustee shall consult with and, if the purchase price does not satisfy the lien, obtain the consent of any party possessing the lien on the subject Asset.

    b. In the event Trustee and the applicable secured creditor(s) deem the terms of the proposed sale to be insufficient for acceptance, Auctioneers shall be notified forthwith to reject the offer.

    c. In the event Trustee and the applicable secured creditor(s) believe the terms of the sale are or may be acceptable, Trustee shall file with this Court a Notice of

Proposed Sale. The Notice of Proposed Sale shall be served on all parties possessing a lien on the subject Asset, the 20 largest unsecured creditors of the estate, the United States Trustee and anyone requesting notice in this case (collectively, the "<u>Interested Parties</u>").

      d.      The Notice of Proposed Sale shall include the following: (i) a description of the item/s proposed to be sold; (ii) the identities of any parties holding or asserting liens or other interests or potential interests in the property; (iii) the identity of the proposed purchaser; and (iv) the material economic terms and conditions of the sale.

      e.      Interested Parties shall have five (5) calendar days from service of the Notice of Proposed Sale to file and serve any objection to a proposed sale (the "<u>Notice Period</u>"). Objections to a proposed sale ("<u>Objections</u>") must be in writing, filed with the Court, and served on other Interested Parties and their respective counsel so as to be received by all such parties prior to 4:00 p.m. prevailing Central Time on the last day of the Notice Period. Each Objection must state with specificity the grounds for that Objection.

      f.      If an Interested Party timely and properly files and serves an Objection to a proposed sale, said objecting Interested Party or the Trustee shall schedule a hearing on the objection and provide notice of the hearing on Trustee, other Interested Parties and their respective counsel. The hearing should be scheduled on an expedited basis if allowed by the Court. However, Trustee may negotiate with the party filing the Objection and may change the terms of the sale without the requirement of further notice, as long as the revised terms generate an equal amount or greater net proceeds to Trustee and are no more onerous to the estate than those set forth in the notice.

      g.      If no Interested Party files and serves an Objection to a proposed sale consistent with the Proposed Sale Procedures, then that proposed sale will be deemed finally and fully authorized by the Court under the terms of the Order approving this Motion, and no further notice or Court approval to consummate the sale will be required or necessary.

      h.      Trustee may consummate a proposed sale prior to expiration of the applicable Notice Period if he obtains each Interested Party's written consent, which written consent may be given via e-mail, facsimile transmission, or other electronic form.

12.      Whether sold during the Pre-sale Period or at Auction, the Assets shall be sold on an "AS IS, WHERE IS, WITH ALL FAULTS" basis, with no representations, warranties, or guarantees, free and clear of any liens, encumbrances and other interests, pursuant to 11 U.S.C. § 363.

13.      As the sale of the Assets is pursuant to 11 U.S.C. § 363, any and all liens, encumbrances, or interests on the Assets shall attach to the proceeds of the sale of the Assets. To the extent any liens or encumbrances exist, Trustee seeks authority to pay any and all validly perfected liens and encumbrances from the proceeds of sale.

14.      Trustee further seeks to compensate Auctioneers from the proceeds of sale in accordance with the Agreement and the Application to Employ, filed contemporaneously herewith and as described in Section 10b above and this section. As additional and further compensation to the payments to the Auctioneer in Section 10b above, Auctioneers shall be entitled to a Buyer's Premium of 15% and 13% on all sales via Auction and the Pre-Sale Period, respectively, and an 18% Buyer's Premium on all online Auction sales, except that with regard

1975888-1      8

to certain Assets, Auctioneer is entitled to only a 5% Buyer's Premium as more fully described in the Agreement. .

15. Auctioneers shall use their reasonable best efforts to sell all of the Assets. In the event any portion of the Assets are not sold or otherwise removed, Auctioneers shall remove said Assets from the Premises, leaving the Premises, in broom swept condition. The cost for removal of the unsold assets shall be incurred and paid for by Auctioneers except that Trustee shall pay for or reimburse the Auctioneers for the actual out of pocket expense for the rental of any dumpsters needed to remove any remaining Assets.

16. Trustee requests that the Court waive any and all applicable stays of an Order approving this Motion, including but not limited to the fourteen (14) day stay of order which is required by Federal Rule of Bankruptcy Procedure 6004(g) so that the Sale Process can be expedited and accomplished without further delay.

17. The Trustee further requests relief restricting and preventing all utility companies, landlords, subtenants, governmental agencies, sheriffs, marshalls or other public officers, creditors and other parties in interest from interfering with the Sale Process.

WHEREFORE, the Trustee respectfully requests this Honorable Court make and enter its Order: (i) approving this Motion and the Agreement; (ii) waiving any and all stays applicable to an Order approving this Motion such that the Order shall become final immediately upon entry in this Court's docket; (iii) authorizing the Trustee to sell the Assets in accordance with the Agreement on an "AS IS, WHERE IS" basis, with no representations or warranties of any kind, free and clear of any liens or encumbrances pursuant to 11 U.S.C. § 363; (iv) authorizing him to take any and all steps necessary to accomplish the foregoing; (v) authorizing Auctioneers to hold any funds received from the sale of the Assets in trust for the bankruptcy estate pending turnover

such funds to the bankruptcy estate as soon as is reasonably possible under the circumstances;

(vi)  ordering that any liens, encumbrances, and other interests attach to the proceeds of the sale to be distributed as soon as reasonably possible after the sale; (vii) authorizing the Trustee to incur expenses not to exceed the expenses set forth in the Agreement; (viii) authorizing the Trustee to pay Auctioneers, from the proceeds of the sale, its commission as set forth in the Agreement; (ix) restricting and preventing all utility companies, landlords, subtenants, governmental agencies, sheriffs, marshalls or other public officers, creditors and other parties in interest from interfering with the Sale Process; and (x) authorizing such other action consistent with the relief requested herein.

Respectfully Submitted,
SUMMERS COMPTON WELLS LLC

Date: November 14, 2017    By: /s/ David A. Sosne
David A. Sosne, #28365MO
Brian J. LaFlamme #49776MO
Attorneys for Trustee
8909 Ladue Road
St. Louis, Missouri  63124
(314)991-4999/(314)991-2413/FAX
dasattymo@summerscomptonwells.com
blaflamme@summerscomptonwells.com

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on November 14, 2017 via electronic filing in the CM/ECF system of the United States Bankruptcy Court for the Eastern District of Missouri to the parties requesting service by electronic filing.  I hereby also certify that a copy of the foregoing was served on November 14, 2017 via United States Mail, first class postage prepaid to those individuals and entities not requesting service by electronic filing.  The individuals and entities being served electronically or by mail are:

| United States Department of Justice<br>U.S. Trustee's Office<br>111 S. 10th Street, Ste. 6353<br>St. Louis, MO 63102 | John Talbot Sant, Jr.<br>Affinity Law Group<br>1610 Des Peres Road, Suite 100<br>St. Louis, MO 63131 |

1975888-1

| | |
|---|---|
| Michelle M. Masoner<br>Laurence M. Franzen<br>Bryan Cave LLP<br>1200 Main Street, Suite 3800<br>Kansas City, MO 64105 | Melinda J. Maune<br>Martin Leigh PC<br>1044 Main Street, Suite 900<br>Kansas City, MO 64105 |
| Worldwide Recycling Equipment Sales, LLC<br>1414 Riley Industrial Drive<br>Moberly, MO 65270 | John T.M. Whiteman<br>Missouri Department of Revenue<br>301 W. High Street, Room 670<br>PO Box 475<br>Jefferson City, MO 65105-0475 |
| Laura Uberti Hughes<br>Cullen K. Kuhn<br>Bryan Cave LLP<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102 | Scott Greenberg<br>600 Washington Avenue, 15th Floor<br>St. Louis, MO 63101-1313 |
| Jennifer M. Snider<br>Witt, Hickling & Snider P.C.<br>2300 Higgins Road, PO Box 1517<br>Platte City, MO 64076 | Thomas G. Berndsen<br>1650 Des Peres Road, Suite 135<br>St. Louis, MO 63131-1899 |
| PPL Group, LLC<br>105 Revere Drive, Suite C<br>Northbrook, IL 60062 | Myron Bowling Auctioneers<br>3901 Kraus Lane<br>Hamilton, OH 45014 |

Date: November 14, 2017            /s/ Christina L. Hauck